UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES - GENERAL</u>

SEND
Enter

Case No.: CV 03-8842 PA (JTLx)　　　　　　　　　　Date: April 6, 2005

Title: Daniel P. Kolton v. Universal Studios, Inc., et al.

**DOCKET ENTRY**

**PRESENT:**

HONORABLE PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| **C. Kevin Reddick** | **Not Reported** |
|---|---|
| **Deputy Clerk** | **Court Reporter** |
| | |
| **Attorneys Present for Plaintiff:** | **Attorneys Present for Defendants:** |
| None | None |

**PROCEEDINGS:** DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES UNDER SECTION 505 OF THE COPYRIGHT ACT

Before the Court is the Motion for Award of Reasonable Attorneys' Fees Under Section 505 of the Copyright Act (Docket No. 51), filed by Defendants Vivendi Universal Entertainment LLLP (sued herein as Universal Studios, Inc.) ("VUE"), Oxygen Cable, LLC (sued herein as Oxygen Media, Inc.) ("Oxygen"), Joseph Lo Duca, and Anchor Bay Entertainment, Inc. ("Defendants") against Plaintiff Daniel P. Kolton ("Plaintiff"). Defendants request a total of $186,525, apportioned as follows: (1) $83,569 for VUE and Oxygen; (2) $82,717 for Lo Duca; and (3) $20,239 for Anchor Bay.[1] The matter has been briefed, and Plaintiff was given an opportunity to submit a supplemental opposition identifying the date, attorney, and amount for each challenged entry, the amount of each challenged entry Plaintiff believes is unreasonable (both in time and monetary value), and Plaintiff's justification for a reduced award. Accordingly, pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

Plaintiff filed his Complaint for Copyright Infringement on December 4, 2003, asserting just one claim. He alleged that he created, authored, composed, and wrote original music ("cues") for three television series: "Xena: Warrior Princess," "Hercules, the Legendary Journeys," and "Young Hercules" ("the Series"). Plaintiff contended that Defendants infringed his copyrights by, among

---

[1] Anchor Bay initially stated that it was seeking $10,256.50, but discovered a computation error. Anchor Bay submitted a Notice of Errata, setting forth the corrected total of $20,239, as supported by the documentation filed with its motion at the outset.

other things, marketing, distributing, merchandising, televising and/or cable-broadcasting individual episodes from the Series on, among others, the Oxygen Channel and the Sci-Fi Channel. He alleged that Defendants also infringed his copyrights by producing, marketing, publishing, and placing digital video discs or digital versatile discs ("DVDs") of the first and second originally televised seasons of "Xena" and "Hercules," which contain his music in synchronization with the visual images in the Series, on the consumer market. Plaintiff claimed that he had notified Defendants that he owned the copyrights and informed them that they were infringing his rights. He asserted that Defendants did not respond.

The Defendants each answered on April 5, 2004.[2/]

Defendants filed their Motion for Summary Judgment, or, in the Alternative, for Order Determining Issues Without Substantial Controversy, together with supporting papers, on October 20, 2004. Defendants asserted four grounds for their motion: (1) implied license; (2) estoppel; (3) statute of limitations; and (4) laches. Plaintiff opposed the motion.

The Order Granting Summary Judgment was filed on December 14, 2004. The Court granted the motion on the first ground, existence of an implied license, finding that, by his conduct, Plaintiff gave Defendant Lo Duca a nonexclusive license to Plaintiff's copyright interest in the music he created for the Series. Notably, beginning in mid-1994, while working for Lo Duca and at Lo Duca's request, Plaintiff knowingly created certain musical cues for use in the Series. He produced the works with the understanding that they would be incorporated into the soundtracks of the Series and broadcast on network television. The Ninth Circuit has held such conduct sufficient to create an implied nonexclusive license to the copyrighted work. See Effects Associates, Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990) (Effects impliedly granted a nonexclusive license when it "created a work at defendant's request and handed it over, intending that defendant copy and distribute it"). The fact that Plaintiff received compensation (approximately $300,000) as consideration for his work further suggested an implied grant of a nonexclusive license to the cues, in the absence of an agreement to the contrary or restitution. Id. at 559 (approximately $56,000 payment); see also Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc., 128 F.3d 872, 881 (5th Cir. 1997) (over $100,000 paid for three years of jingle writing suggested implied grant of nonexclusive license to jingles). Plaintiff offered no evidence to establish that Lo Duca took any action inconsistent with copyright ownership, nor did Plaintiff attempt to rescind the license. The Court therefore found no triable issues of material fact as to Plaintiff's claim and granted the motion. Judgment was entered on December 17, 2004, and included a provision for Defendants' costs of suit.

Reasonable Attorney's Fees Under the Copyright Act

The Copyright Act provides that a district court may, in its discretion, award reasonable attorney's fees to the prevailing party in a civil suit as part of its costs. 17 U.S.C. § 505. Following

---

[2/]    On April 20, 2004, the Court dismissed Renaissance Pictures without prejudice for lack of prosecution and plaintiff's failure to respond to the Court's Order to Show Cause re: Lack of Prosecution ("OSC"), issued on April 6, 2004.

the Supreme Court's ruling in Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the same standard applies regardless of which side prevails. As the Ninth Circuit explained: "evenhandedness means that the courts should begin their consideration of attorney's fees in a copyright action with an evenly balanced scale, without regard to whether the plaintiff or defendant prevails, and thereafter determine entitlement without weighting the scales in advance one way or the other." Fantasy, Inc. v. Fogerty, 94 F.3d 553, 560 (9th Cir. 1996). Courts need not find "bad faith, frivolousness or vexatious conduct[.]" Id. Rather, courts "may look to the nonexclusive Lieb [v. Topstone Indus., Inc., 788 F.2d 151 (3d Cir. 1986)] factors as guides and may apply them so long as they are consistent with the purposes of the Copyright Act and are applied evenly to prevailing plaintiffs and defendants[.]" Id. "Attorney's fees should be awarded to the prevailing party, not 'as a matter of course,' but 'only as a matter of the court's discretion.'" Earth Flag Ltd. v. Alamo Flag Co., 154 F.Supp.2d 663, 665 (S.D.N.Y. 2001) (quoting Fogerty v. Fantasy, Inc., 510 U.S. at 533-534, 114 S.Ct. at 1033, 127 L.Ed.2d 455).

The Supreme Court listed several factors to guide the district court's decision whether to exercise its discretion, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty v. Fantasy, 510 U.S. at 534 n.19, 114 S.Ct. at 1033 n.19 (citation omitted). Additional considerations include "the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." Ets-Hokin v. Skyy Spirits Inc., 232 F.3d 763, 766 (9th Cir. 2003) (citing Fantasy v. Fogerty, 94 F.3d at 559-560).

The fee applicant "bears the burden of 'submitting evidence supporting the hours worked and rates claimed.'" Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

1. Prevailing Party Status

Having entered judgment on the merits for Defendants on Plaintiff's sole claim, the Court finds that Defendants are the prevailing parties.

2. Factors Relevant to Exercise of Discretion

As set forth above, several factors guide the Court's analysis in deciding whether to exercise its discretion.

First, was the Plaintiff's claim objectively unreasonable, either factually or legally? Relevant, indeed dispositive, Ninth Circuit authority has been on the books since 1990. See Effects Associates, Inc. v. Cohen, 908 F.2d at 558 (nonexclusive license implied where plaintiff "created a work at defendant's request and handed it over, intending that defendant copy and distribute it"); see also Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc., 128 F.3d at 882 ($100,000 consideration paid for three years of jingle writing suggests that implied nonexclusive license was granted); Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 752-53 (11th Cir. 1997) (parties' conduct, not intent, determined whether a nonexclusive license was implied). Plaintiff Kolton received substantial consideration over the course of several years in exchange for his composition of musical "cues" at

Defendant Lo Duca's request and direction. Plaintiff admitted that he knew that Lo Duca used the cues Plaintiff composed for Lo Duca's music in the Series. In short, this was not a close case.

Second, Plaintiff's copyright infringement claim had little likelihood of success from the outset, given the existing law. The issue of nonexclusive licenses implied by a party's conduct was not unsettled, and Plaintiff's facts did not require novel line-drawing or hair-splitting to rule in Defendants' favor on their summary judgment motion. Plaintiff, moreover, had access to capable counsel. The Court finds that Plaintiff's copyright infringement claim in these circumstances was frivolous.

Third, with respect to Plaintiff's motivation, the record showed that Plaintiff waited to file this action, even after he knew that Defendant Lo Duca was receiving royalties. Plaintiff testified that he learned about the royalties sometime between 1993 and 1999.[3] He did not file this action, however, until December 2003. The significant lapse of time from his discovery (if, in fact, he did not know all along) until he filed his complaint for copyright infringement suggests that his primary motivation was not vindicating his rights so much as sharing in royalties to which he was not entitled. This factor, too, weighs in favor of an award of attorney's fees.

Fourth, as the Supreme Court explained in Fogerty v. Fantasy, Inc., one goal of the Copyright Act is to discourage infringement, but "it is by no means the only goal of that Act." 510 U.S. 517 at 526, 114 S.Ct. at 1029, 127 L.Ed.2d 455 (emphasis in original). Rather, "the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." Id. The chief objective "is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" 510 U.S. at 527, 114 S.Ct. at 1030 (quoting Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 349-350, 111 S.Ct. 1282, 1289-1290, 113 L.Ed.2d 358 (1991) (in turn quoting U.S. Constit., Art. I, § 8, cl. 8)). Thus, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." Id. (observing that "successful defense of song 'The Old Man Down the Road' increased public exposure to a musical work that could, as a result, lead to further creative pieces.").

Defendants in this case prosecuted a meritorious defense and thereby "demarcated more clearly the boundaries of copyright law[.]" See Mattel, Inc. v. Walking Mountain Productions, 2004 WL 1454100 (C.D. Cal. 2004). Requiring Plaintiff to pay attorney's fees will compensate Defendants for having to defend against a frivolous claim and will serve, one hopes, to deter those contemplating similarly baseless claims. The Court concludes that exercising its discretion to award fees here will further the purposes of the Copyright Act.

3. Reasonable Fees

The Ninth Circuit has adopted the lodestar method for assessing the amount of reasonable attorney's fees. Morales v. City of San Rafael, 96 F.3d 359, 363 (1996), as amended on denial of

---

[3]     Defendant Lo Duca maintains that at least by May 1996, Plaintiff was aware of the royalties.

rehearing and rehearing en banc, 108 F.3d 981 (9th Cir. 1997). Multiplying a reasonable hourly rate by the number of hours reasonably expended on the case yields the lodestar.[4] As part of the process of calculating the lodestar, courts should consider several factors, including without limitation: (1) the time and labor required; (2) the preclusion of other employment by the attorney due to acceptance of the case; (3) the customary fee; (4) time limitations imposed by the client or the circumstances; (5) the undesirability of the case; (6) the nature and length of the professional relationship with the client; and (7) awards in similar cases. Id. at n.8. Courts need not "recite" the twelve so-called Kerr factors, as long as they consider those not already taken into account in the lodestar figure. Id. at n.10 (citing McGinnis v. Kentucky Fried Chicken of California, 51 F.3d 805, 809 (9th Cir. 1994)).

Before turning to the hourly rates and hours expended, the Court notes that Defendants have not argued that their attorneys were precluded from other employment as a result of their representation of Defendants in this case, nor do the clients claim that they imposed any time limitations on their attorneys. Defendants also do not contend that the case was "undesirable," and they do not ask the Court to consider the nature or length of the their professional relationships with the attorneys. The remaining factors are addressed below.

   a. Reasonable Hourly Rates

"[T]he definition of what is a reasonable fee applies uniformly to all federal fee-shifting statutes. . . ." See Anderson v. Director, Office of Workers Compensation Programs, 91 F.3d 1322, 1325 (9th Cir. 1996) (citing City of Burlington v. Dague, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992)). In Blum v. Stenson, 465 U.S. 866, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court stated that prevailing parties needed to justify the reasonableness of the requested rate or rates. "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 465 U.S. at 896 n.11, 104 S.Ct. at 1547 n.11; accord, Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001) . Rates established this way are deemed reasonable. Blum, 465 U.S. at 896 n.11; 104 S.Ct. at 1547 n.11.

Defendants have failed to provide any evidence of prevailing market rates or any basis for determining whether the rates they seek by their motion are reasonable. Notably, Defendants have submitted no declarations or other evidence of market rates for attorneys with their levels of experience or specialization.[5] Even in the attorneys' declarations, no attempt is made to set forth applicable market rates.

---

[4]     The Ninth Circuit explained that with the adoption of the lodestar method, courts no longer needed to consider certain factors set forth in Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975), because they were subsumed within the lodestar calculation, in particular, "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, . . . and (5) the contingent nature of the fee agreement." 96 F.3d at 364 n.9.

[5]     For example, the American Intellectual Property Law Association's Report of the Economic Survey.

Anchor Bay claims the following hourly rates: Shannon H. Alexander, $250; Jeffrey T. Peterson, $240; Melissa Dalziel, $210. Declaration of Shannon H. Alexander ("Alexander Decl.") ¶ 7. Ms. Alexander states that she was the attorney responsible for the matter. Alexander Decl. ¶ 5. She also states that Weissmann, Wolff's litigation department specializes in entertainment litigation and has expertise in intellectual property, and lists selected firm cases and successes. Id. ¶ 6.[6/] In setting forth the rates they seek, she notes that these are "less than our customary hourly rates and are within the prevailing market rates in the Los Angeles community for attorneys and paralegals of comparable experience, skill and reputation." She offers no basis for this conclusion. Ms. Alexander simply identifies the schools from which the attorneys received their law degrees and their graduation dates along with their rates, and asserts that they defended the action as economically as possible. No resumes are attached. Defendants thus have not established that the rates requested for Weissmann, Wolff "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 896 n.11, 104 S.Ct. at 1547 n.11.

As for the fees Anchor Bay incurred at the outset of the lawsuit when it was represented by the firm of Sedgwick, Detert, Moran & Arnold, LLP ("Sedgwick"), before Weissmann, Wolff substituted in as counsel, Defendants have not authenticated the invoices and have made no effort to justify the rates claimed for the work. Indeed, there is no way to determine who performed any of the tasks listed because the invoices list only initials. Ms. Alexander admittedly lacks personal knowledge of any aspect of the Sedgwick rates or work, stating on information and belief that the amount of $3,129 was *billed*, and that she reviewed the invoices and concluded that the services should be paid in full. Anchor Bay submits no information about (or by) the attorneys, nor has it explained or justified the rates. The Sedgwick invoices are not properly before the Court, and the Court will not consider them.

Attorney David Aronoff, a partner at Leopold, Petrich & Smith, P.S. ("Leopold"), representing Defendants VUE/Oxygen and Lo Duca, claims the following hourly rates: for himself, $255; Lou Petrich, $300; Lincoln Bandlow, $240; and Tracy Rane, $190. Declaration of David Aronoff ("Aronoff Decl.") ¶ 5. He states that all the rates are "significantly lower than the rates that are typically charged by comparable law firms for matters of this kind." Id. Mr. Aronoff offers no foundation for his statement. Mr. Aronoff states that Leopold "specialize[s] in the defense of intellectual property claims, especially copyright infringement actions." Id., ¶ 8. He lists the firm's major clients and identifies cases resulting in published opinions in which the firm represented defendants. Id., ¶ 9.[7/] Mr. Aronoff notes his involvement in the Los Angeles Copyright Society and his chairmanship of the Intellectual Property and Entertainment Law Section of the Los Angeles

---

[6/]  She does not explain the relevance of the list by, for example, indicating whether indicate whether she was attorney of record in any of the litigation mentioned or whether any court has awarded fees to the firm's clients under any fee-shifting statutes.

[7/]  Of significance in the list: Leopold represented defendants in *Effects Associates, Inc. v. Cohen*, the pivotal case in the underlying summary judgment here. Mr. Aronoff's suggestion that this case was complex is puzzling in light of his firm's role in helping to shape the applicable law. The Court wonders why, when Defendants received demand letters from Plaintiff's counsel, the attorneys did not simply point out this authority (if not their participation) in an effort to resolve the dispute short of litigation.

County Bar Association. Id., ¶¶ 5, 10. Mr. Aronoff states that he graduated from Hastings College of the Law in 1986. Id., ¶ 5. He attaches no resumes. No information is provided for attorneys Petrich, Bandlow, or Rane. Defendants thus have not established that the rates requested for Leopold "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 896 n.11, 104 S.Ct. at 1547 n.11.

The Court finds that neither Weissmann, Wolff nor Leopold has established that their rates were reasonable. Plaintiff does not object to the hourly rates, however, stating that he "believes that the hourly rates sought by defense counsel are within the range of fees charged by similarly experienced lawyers in like matters." Plaintiff's Supplemental Brief in Opposition to Defendants' Motion for Attorneys' Fees at 2. Thus, notwithstanding the inadequate support Defendants have submitted for the requested rates and because the rates are not facially unreasonable, the Court declines to exercise its discretion to make an adjustment.

### b. Reasonable Number of Hours

In evaluating the number of hours counsel expended in this litigation to determine reasonableness, the Court has taken into account a number of factors. First, the Court relies on the same reasons that led the Court to conclude that Plaintiff's action was frivolous, namely, the legal issues were well-established; the facts Plaintiff presented were straightforward; and the analysis required here was not complex. In addition, this case did not involve an extensive record. The law was not complicated. No cross-motion was filed. The summary judgment motion, while well-written and supported, did not require extensive briefing. The supporting documentation, moreover, consisted of four declarations, copies of contracts and demand letters, two DVDs, a list of the musical cues, and excerpts from the transcript of Plaintiff's deposition. In light of these facts and counsel's claimed expertise in copyright infringement cases, the Court finds no basis on the record here to award any more fees than were necessary to achieve the final result

Beginning with Weissmann, Wolff's invoices, Defendant Anchor Bay claims 32.25 hours for Shannon Alexander at the hourly rate of $250, resulting in a lodestar of $8,062.50. It appears that 12.75 hours were spent on the summary judgment motion, which the Court will allow. Time billed for conflict waivers, joint defense agreement, status calls, and other tasks that are too vaguely described to determine whether the time spent was reasonable, 1.5 hours, is disallowed. The lodestar for Ms. Alexander's adjusted time is $7,687.50.

Anchor Bay claims 36.5 hours for Jeffrey Petersen at $240 per hour, a lodestar of $8,760. The Court disallows time spent on indemnity issues, fee agreements, "recordation," seeking payment on invoices, and vague "attention to" descriptions, in the amount of 7.5 hours. The adjusted lodestar for 29 hours is $6,960.

Anchor Bay also claims 3.5 hours for Melissa Dalziel at $210 per hour (lodestar: $735) and 1.25 hours for the "document clerk" at $80 per hour ($100). The document clerk's time is disallowed as overhead. Most, if not all, of Ms. Dalziel's time was spent on substitution of counsel and related matters and is disallowed.

Finally, Anchor Bay's submission of its invoices from the Sedgwick firm in the amount of $3,129 is not properly before the Court, as discussed above, and the Court deducts this sum from Anchor Bay's request.

Reviewing Weissmann, Wolff's invoices has been complicated by the fact that timekeepers often lumped several tasks into a single daily entry, and the firm billed in quarter-hour segments. Block billing makes it impossible to tell how much time was spent on each activity and may increase time by 10% to 30%. See California State Bar Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01, Detecting Bill Padding, available at http://calbar.ca.gov. The Committee on Mandatory Fee Arbitration further noted that the standard billing increment is 1/10th of an hour (6 minutes). "If a higher minimum [billing increment] is used, such as .25 or .5, this probably increases the time by 15% to 25%." Id. The inadequacy of Anchor Bay's submission warrants a reduction in the number of hours. The Court adopts the low range of estimated overbilling for each of the two billing practices, 10 percent for block billing and 15 percent for quarter-hour billing, and reduces the remaining time by 25 percent. The total is $10,985.63.

The Leopold firm, representing the remaining defendants, divided its bills between Defendant Lo Duca and Defendants Vivendi Universal and Oxygen ("VUE/Oxygen"). Defendant Lo Duca claims $82,717 in fees, and VUE/Oxygen claim $83,569. Although Leopold billed its clients in this fashion, the attorneys did not perform the work separately for each. Thus, for example, where Mr. Aronoff billed 2.4 hours to Lo Duca for "research and draft memorandum of points and authorities in support of motion for summary judgment" on June 10, 2004, he also billed this amount to VUE/Oxygen, for a total of 4.8 hours. It would be a relatively simple matter just to double the time logged on one of the bills to obtain the total amount of time spent on a task, except that not all the time billed to each client was identical. Furthermore, VUE/Oxygen failed to subtotal *any* tasks or projects by attorney. As a result, the Court has spent far more time than should have been necessary simply to determine how much time each attorney spent on each activity. Nonetheless, the Court has examined all the invoices submitted and calculated the subtotals for tasks or activities for each lawyer.

Further complicating the analysis is the fact that many if not most of the tasks or activities on the invoices are not discussed, explained, or justified in any way. It is the fee applicant's burden, of course, to show that the time spent was reasonable. Notwithstanding the Court's close review of the invoices, there are numerous instances where the Court is left to speculate as to what the attorneys did, why it mattered to the outcome, and why the time spent was reasonable. The Court declines to do so.

Based upon the Court's close review of the billing records, Mr. Aronoff billed a total of 570.15 hours to this case at $255 per hour for a lodestar of $145,388.25. Of this amount, 6.9 hours were spent on conflict waiver, indemnity, insurance, and representation issues, and 10.5 hours related to the joint defense arrangement between the Leopold defendants and Anchor Bay. The Court disallows all this time for the reasons noted above. The Court exercises its discretion not to award fees for counsel's review of Anchor Bay's discovery responses (.15 hours), an "OSC re default" (.4 hours), a confidentiality order (.8 hours), a stipulation to continue the trial date (3.1 hours), the "ASCAP subpoena" (27.5 hours), status reports to clients (10.15 hours), and otherwise vague or unclearly described tasks (3.45 hours). At no point in his declaration has Mr. Aronoff explained why

any of these tasks or activities should be compensated at all, let alone why the time spent was reasonable.

Mr. Aronoff billed 250.75 hours on the summary judgment motion, 57.45 hours on the summary judgment reply memorandum, 3.5 hours on evidentiary objections, and 15.5 hours on the hearing. Because the issue of nonexclusive licenses implied by a party's conduct was not unsettled, and Plaintiff's facts did not require novel line-drawing or hair-splitting to rule in Defendants' favor on their summary judgment motion, the Court finds the number of hours spent on the summary judgment motion excessive and deducts 50 hours. Similarly, 57.45 hours for the reply memorandum is not reasonable, and the Court deducts 37.45 hours. The Court will allow 9.5 hours for preparation for the hearing and the hearing on the motion for summary judgment. The reasonable number of hours for Mr. Aronoff's representation is 409.6 hours. The revised lodestar is $104,448.

Defendants also seek an award for the hours expended by three other Leopold attorneys. Mr. Petrich billed 17 hours to the case at $300 per hour, for a lodestar of $5,100. Mr. Bandlow billed 26.8 hours at $240 per hour. The lodestar for his work is $6,432. Tracy Rane billed 45.2 hours to the case at $190 per hour. The lodestar for this time is $8,588.

The total allowable attorney's fees for Defendants Vivendi Universal Entertainment LLLP, Oxygen Cable, LLC, and Joseph Lo Duca is $124,568.

Conclusion

Based upon the foregoing, the Court finds that Plaintiffs' reasonable attorneys' fees are $135,553.63, apportioned as follows: for Defendant Anchor Bay Entertainment, Inc., $10,985.63; for Defendants Vivendi Universal Entertainment LLLP, Oxygen Cable, LLC, and Joseph Lo Duca, $124,568.

IT IS SO ORDERED.